UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANWANDA SIMS** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-2609** |
| **LOUISIANA STATE, ET AL.** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] by defendants, the State of Louisiana through the Louisiana Department of Health ("LDH") and the Florida Parishes Human Services Authority ("FPHSA")[2] (collectively, "defendants"), to dismiss *pro se* plaintiff Shanwanda Sims' ("Sims") claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) or, alternatively, for a more definite statement pursuant to Rule 12(e). Sims opposes[3] the motion. For the reasons that follow, the Court grants the motion to dismiss.

### I.   FACTUAL BACKGROUND

Sims is an African American female,[4] who has been employed with the FPHSA as a licensed practical nurse since May 28, 2013.[5] Sims initially filed an online inquiry

---

[1] R. Doc. No. 6. The defendants note that Sims does not make factual allegations against LDH specifically—only against FPHSA. *Id.* at 13. As the Court finds that Sims' claims should be dismissed on other grounds, it will not reach the issue of whether Sims failed to state a claim for relief against LDH specifically. Nor will the Court address the defendants' argument that the Civil Service Commission has exclusive jurisdiction over Sims' claim for back pay. *Id.* at 13–14.

[2] Comprised of the parishes of Livingston, St. Helena, St. Tammany, Tangipahoa, and Washington. La. Stat. Ann. § 28:912(A)(3).

[3] R. Doc. No. 11.

[4] R. Doc. No. 1, at 4.

[5] R. Doc. No. 1-1, at 7.

with the Equal Employment Opportunity Commission ("EEOC") on June 23, 2020. She then filed a "Charge of Discrimination" with the EEOC on December 28, 2020. In her EEOC charge, Sims alleged that she took Family and Medical Leave Act ("FMLA") leave due to a medical condition, but "[t]he use and frequency of [her] leave did not set [sic] well with [her] employer and ultimately resulted in an unjustified negative evaluation."[6] After she attempted to file a "grievance," Sims further alleged, she began "experiencing retaliation, on-going targeting, harassment, and increased surveillance by management."[7] She then alleged that, "[m]ost recently (on 3/6/2020), [she] was denied accommodations under [the] ADA."[8] While Sims did check the box for "race" in answer to the question of why she thought she was discriminated against on the EEOC charge form,[9] the factual allegations included in her EEOC charge did not mention racial discrimination.

On February 25, 2022, the EEOC issued its determination related to her charge, stating that "[t]he EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations" occurred.[10] She received notice of her right to sue on May 13, 2022.[11]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 6.
[10] *Id.* at 8.
[11] *Id.* at 13.

Sims filed her complaint[12] in this Court on August 9, 2022. In her complaint, Sims alleges she has been subject to employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. § 2000e *et seq*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*, and 42 U.S.C. §§ 1981 and 1983.[13] Specifically, Sims' complaint alleges that (1) she was denied accommodations under the ADA on March 6, 2020 due to her race;[14] (2) she was issued reprimands between March 12, 2018 and June 22, 2020 for mistakes that white employees were not punished for committing;[15] (3) between February 15, 2017 and October 31, 2018, she was "illegally harassed" for "missed work that was covered by intermittent FMLA[,]" and for outstanding unsigned patient notes due to her race;[16] (4) she received poor performance evaluations between September 20, 2016 and December 14, 2020 based on her race, as her "white co-workers [were] not being

---

[12] R. Doc. Nos. 1 and 1-1, at 1–4. The Court notes that while pages one through four of R. Doc. No. 1-1 are part of Sims' complaint, pages five through seven consist of Sims' EEOC charge, and pages eight through thirteen relate to the EEOC's determination of her charge.
[13] *Id.* at 3.
[14] R. Doc. No. 1-1, at 1.
[15] *Id.* at 1–2.
[16] *Id.* at 2. The factual allegations in Sims' complaint supporting her third claim indicate that she filed a "grievance" on August 28, 2018 in response to the harassment she alleges she suffered for her use of FMLA leave. *Id.* She further alleges that her grievance "fell on deaf ears" and she has been "consistently targeted, harassed, [and] retaliated against[.]" *Id.* Her EEOC charge similarly alleges that, after she attempted to file a grievance related to the FPHSA's negative response to her taking FMLA leave, she "beg[a]n experiencing retaliation, on-going targeting, harassment, and increased surveillance by management." *Id.* at 7. Accordingly, Sims' allegations relating to retaliation arise under the FMLA. As Sims does not include retaliation in violation of the FMLA as a cause of action in her complaint before this Court, the Court will not address retaliation in violation of the FMLA in this Order & Reasons.

3

held to the same accountability" as Sims;[17] (5) on "various dates," Sims' supervisor discriminated against her based on Sims' race;[18] (6) on "various dates," she was reprimanded for having outstanding unsigned patient notes due to her race;[19] and (7) she is not being paid "at the same or equitable pay rate as [her] white, Caucasian counterpart."[20]

## II. STANDARDS OF LAW

### a. Dismissal for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

---

[17] *Id.* at 2–3.
[18] *Id.* at 3–4.
[19] *Id.* at 4.
[20] *Id.* In the "Statement of Claim" section of Sims' complaint, she also states that "alleged discriminatory acts occurred on" December 23, 2021, and May 6, 2022, but she does not provide any factual allegations as to the acts she contends occurred on those dates. R. Doc. No. 1, at 4.

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### b. Dismissal for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). It "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted). In considering a motion to dismiss, a court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

### c. Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) states, in pertinent part, that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The motion must be made prior to filing a responsive pleading and "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). A court should only grant a motion for more definite statement when the complaint is "so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Phillips v. ABB Combustion Eng'g, Inc.*, No. 13-594, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013) (Feldman, J.); *accord Koerner v. Vigilant Ins. Co.*, No. 16-13319, 2016 WL 4728902,

at *1 (E.D. La. Sept. 12, 2016) (Africk, J.). "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." Fed. R. Civ. P. 12(e).

### III.     ANALYSIS

#### a.  Sims' Title VII and ADA Claims Should Be Dismissed Pursuant to Rule 12(b)(1) for Failure to Exhaust Her Administrative Remedies

##### i.     *Sims' EEOC Charge Did Not Allege Violations of Title VII*

"Before a plaintiff may file suit in federal court under either Title VII or the ADA, the plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (citing *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (per curiam)). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996)); *see also Cormier v. Wal-Mart Stores, Inc.*, 145 F. Supp. 3d 666, 667 (W.D. La. 2015) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party within 180 days of the alleged discrimination and receive statutory notice of the right-to-sue the respondent named in the charge."). While "administrative exhaustion is not a *jurisdictional* requirement, it is still a requirement." *Stroy v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018) (affirming district court's dismissal of plaintiff's employment discrimination suit where plaintiff

failed to exhaust administrative remedies and offered no justification for failing to do so besides his "good faith effort") (emphasis in original).

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citation omitted). "Any charge not alleged in the EEOC complaint and/or reasonably expected to grow out of the EEOC investigation is barred from judicial review." *Oramous v. Mil. Dep't of La.*, No. 05-3677, 2007 WL 2344921, at *1 (E.D. La. Aug. 15, 2007) (Wilkinson, M.J.).

Sims failed to exhaust her administrative remedies as to her Title VII claim of racial discrimination. Sims' lone EEOC charge, filed on December 28, 2020,[21] exclusively concerned her allegations that she was denied accommodations under the ADA, that "the use and frequency of [her] leave did not set [sic] well with [her] employer and ultimately resulted in an unjustified negative evaluation[,]"[22] and that she had been "experiencing retaliation, on-going targeting, harassment, and increased surveillance by management."[23]

Though Sims checked the box for "race" on the EEOC "Charge of Discrimination" form as one of the reasons why she thought she was being discriminated against,[24] merely "checking the box" is not sufficient to allege a

---

[21] R. Doc. No. 1-1, 6–7.
[22] *Id.* at 7.
[23] *Id.*
[24] *Id.* at 6.

8

violation of Title VII sufficient to constitute exhaustion. "'[T]he crucial element of a charge of discrimination is the factual statement [particulars section] contained therein.'" *Ellzey v. Cath. Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 601 (E.D. La. 2011) (Engelhardt, J.) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) (alteration in *Ellzey*)). In *Givs v. City of Eunice*, the United States District Court for the Western District of Louisiana held that, even where the plaintiff checked both the "race" and "retaliation" boxes on the EEOC charge form, checking the box for "retaliation" without then making any factual allegations concerning retaliation or harassment was insufficient: "the Court does not accept that merely checking the retaliation box is sufficient to exhaust his administrative remedies." The court concluded that the plaintiff's "failure to allege *any facts* concerning retaliation or harassment that would have put the EEOC on notice about the possibility of such, are fatal to these claims." 512 F. Supp. 2d 522, 536–37 (W.D. La. 2007), *aff'd*, 268 F. App'x 305 (5th Cir. 2008) (emphasis in original) (citing *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *see also Ellzey*, 833 F. Supp. 2d at 601 ("Several courts in the Fifth Circuit have held that a plaintiff fails to exhaust his/her administrative remedies as to a particular claim if his charge does not contain the claim or make allegations giving rise to the claim.").

Aside from simply checking the box marked "race," Sims' EEOC charge made no mention of racial discrimination. As stated, in her summary of the basis for her EEOC charge, in which she alleged a violation of the ADA as well as retaliation, Sims makes no factual allegations pertaining to racial discrimination. A claim of racial

9

discrimination in violation of Title VII could not be "reasonably expected to grow out of" an EEOC investigation where the only factual allegations are that the defendants failed to provide Sims accommodations under the ADA, she received a poor performance review as a result of her taking FMLA leave, and she was subjected to retaliation for attempting to file a grievance.[25] *Thomas*, 220 F.3d at 395. As the Court finds that Sims has failed to exhaust her administrative remedies as to her Title VII claims, those claims will be dismissed without prejudice.

> ii. *Sims' EEOC Claims Pursuant to the ADA Were Untimely*

Pursuant to 42 U.S.C. § 2000e-5(e)(1), "[an EEOC] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." The EEOC's regulations set out the requirements for charges alleging employment discrimination. A charge must "be in writing and signed and . . . verified." 29 C.F.R. § 1601.9. A verified charge is one that has been "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths . . . or [is] supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a).

As stated, Sims' EEOC charge asserted that the date the most recent allegedly discriminatory action occurred was March 6, 2020.[26] The 180-day period for Sims to

---

[25] *Id.* at 7.
[26] *Id.* at 6, 7 ("Most recently (on 3/6/2020), I was denied accommodations under [the] ADA.")

10

file her complaint therefore ended on September 2, 2020. However, Sims' EEOC charge was filed on December 28, 2020.[27]

Sims asserts that she filed within the 180-day period because she "submitted an online inquiry with EEOC on June 23, 2020."[28] However, an online inquiry does not qualify as a verified EEOC charge. *See McLeod v. Floor & Decor Outlets of Am., Inc.*, No. 20-03134, 2021 WL 2515750, at *2 (N.D. Tex. June 18, 2021) ("The Court concludes that [the plaintiff's] unverified inquiry information form does not qualify as a charge and thus [the plaintiff] has failed to exhaust her administrative remedies regarding her Title VII retaliation claim."); *see also Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 338 (5th Cir. 2021) ("An intake questionnaire that 'is not verified as required by EEOC regulations . . . cannot be deemed a charge.'" (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017))). Sims failed to timely submit an EEOC charge alleging violations of the ADA, and therefore failed to exhaust her administrative remedies as to that claim. The Court will accordingly dismiss the ADA claim without prejudice.[29]

---

[27] R. Doc. No. 1, at 5.
[28] R. Doc. No. 11, at 8 ("Because I filed the online inquiry dated June 23, 2020, I was within the one hundred and eight [sic] days of the unlawful employment practice occurrence.")
[29] As the Court will dismiss Sims' ADA claims for failure to exhaust her administrative remedies, it need not reach the defendants' additional argument that Sims has failed to allege that she has a qualifying disability pursuant to the ADA. R. Doc. No. 6-1, at 12–13.

11

### b. Defendants Are Entitled to Sovereign Immunity as to Sims' 42 U.S.C. §§ 1981 and 1983 Claims

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citations omitted). "[E]leventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action." *Jefferson v. La. Sup. Ct.*, 46 F. App'x 732, 732 (5th Cir. 2002); *see also Arce v. Louisiana*, No. 16-14003, 2017 WL 5619376, at *4 (E.D. La. Nov. 21, 2017) (Africk, J.) ("Sovereign immunity operates as 'a constitutional limitation on the federal judicial power.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984))). Thus, absent exceptions not relevant here, sovereign immunity generally bars a federal court from exercising jurisdiction over a suit against a non-consenting state. *See, e.g., Velazquez v. City of Westwego*, 531 F. Supp. 3d 1142, 1150 (E.D. La. 2021) (Africk, J.) (citing *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011)).

The State of Louisiana has not waived its Eleventh Amendment immunity,[30] *see, e.g., Holliday v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*, 149 So. 3d 227, 229 (La. 2014)), and "Congress has not abrogated state sovereign immunity under . .

---

[30] "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. Stat. Ann. § 13:5106(A).

. § 1983[.]"[31] *Raj*, 714 F.3d at 328 (citing *Quern v. Jordan*, 440 U.S. 332, 339–340 (1979) and *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)).

"Immunity under the Eleventh Amendment extends to any state agency that is deemed an 'alter ego' or an 'arm of the state' such that the State itself is the 'real, substantial party in interest.'" *Stratta v. Roe*, 961 F.3d 340, 350 (5th Cir. 2020) (quoting *Vogt v. Bd. Of Comm'rs*, 294 F.3d 684, 688–89 (5th Cir. 2002) (internal quotation marks and citations omitted)). A district court determining whether an entity is an arm of the state weighs the following six factors:

> (1) whether the state statutes and case law view the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Id.* at 350–51 (citing *Clark v. Tarrant Cty., Texas*, 798 F.2d 736, 744–45 (5th Cir. 1986)). The second factor is given the most weight in the court's analysis, because "[t]he Eleventh Amendment exists mainly to protect state treasuries." *Id.* (quoting *United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004)). Conversely, "the fifth and sixth factors are the least important." *Smith v. Bd. Comm'rs La. Stadium & Exposition Dist.*, 372 F. Supp. 3d 431, 448 (E.D. La. 2019) (Morgan, J.).

---

[31] Congress abrogated state sovereign immunity as to claims made pursuant to several statutes, including the ADA, in 42 U.S.C. § 2000d-7: "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . the Age Discrimination Act of 1975[.]"

13

The LDH is an arm of the state.[32] Consequently, the Court must only consider whether, weighing the six factors above, the FPHSA is an arm of the state and therefore entitled to immunity under the Eleventh Amendment.

Applying the first factor, the FPHSA and nine other such "human services authorities" were established by Act 594 of the 2003 legislative session of the Louisiana Legislature to provide "state-funded behavioral healthcare and care for persons with intellectual disabilities and developmental disabilities . . . at a local level to ensure local accountability, responsiveness to the unique needs of the community, and the establishment of local partnerships and relationships with other local agencies that serve individuals in the community." La. Stat. Ann. § 28:910(A). Pursuant to La. Stat. Ann. § 28:915(C), "[e]ach human services district or authority shall . . . be a political subdivision of the state[.]" The FPHSA's classification as a political subdivision is not determinative of the issue before this Court. *Smith*, 372 F. Supp. 3d at 440; *see also Slowinski v. England Econ. & Indus. Dev. Dist.*, 2002-0189 (La. 10/15/02), 828 So. 2d 520, 524 ("[T]he characterization of the [England Economic and Industrial Development District] as a 'political subdivision of the state' is not determinative of whether it is an 'instrumentality of the state.'").

The second and most important factor—concerning the source of FPHSA's funding—weighs in favor of finding the FPHSA to be an arm of the state. The Court's

---

[32] "The Eastern District of Louisiana has noted that the LDH is '"considered an arm of the state" and, therefore, protected by the Eleventh Amendment' from suit." *Jones v. Gee*, No. 18-5977, 2020 WL 564956, at *8 (E.D. La. Feb. 5, 2020) (Lemelle, J.) (citing *Montgomery-Smith v. La. Dep't Health and Hosp.*, 299 F. Supp. 3d 790, 807 (E.D. La. March 2, 2018) (internal citation omitted)).

14

analysis of this factor consists of a two-part inquiry: "In assessing this second factor, we conduct inquiries into, first and most importantly, the state's liability in the event there is a judgment against the defendant, and second, the state['s] liability for the defendant's general debts and obligations." *Vogt*, 294 F.3d at 693 (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 687 (5th Cir.1999)).

First, any judgment entered against the FPHSA would be paid by the state. The Louisiana legislature established the "Self-Insurance Fund" within its Department of the Treasury, which "consists of all premiums paid by state agencies under the state's risk-management program and is used for, among other things, the payment of losses incurred by state agencies." *SkyRunner, LLC v. La. Motor Vehicle Comm'n*, No. 19-00049, 2019 WL 5681537, at *4 (W.D. La. Oct. 31, 2019) (citing La. Stat. Ann. § 39:1533(A)(1)). The statute establishing the Self-Insurance Fund specifically lists the FPHSA as a covered entity.[33] Thus, any judgment entered against the FPHSA would be paid by the state.

Second, the state is indirectly responsible for the general debts and obligations of the FPHSA because the state provides funding for the FPHSA's operations. Pursuant to statute, "(1) [t]he secretary of the [LDH] shall have the authority to enter into a sole-source contract with districts or authorities for the provision of behavioral health services, developmental disabilities and intellectual disabilities services[.]"

---

[33] "This fund shall be used only for the payment of losses incurred by state agencies under the self-insurance program, premiums for insurance obtained through commercial carriers, administrative expenses associated with . . . the payment of losses incurred by the Florida Parishes Human Services Authority . . . ." La. Stat. Ann. § 39:1533(A)(1).

La. Stat. Ann. § 28:918(B)(1). "For any service contracted by the [LDH], the [LDH] shall provide the funding appropriate for the adequate delivery of such services[.]" *Id.*

The FPHSA's strategic plan for fiscal years 2020 through 2025 also support finding that the source of funding for the FPHSA's general debts and obligations are provided by the state: "Functions and funds relative to the operation of these services were transferred to FPHSA from the Louisiana Department of Health (LDH). Some funds relative to these functions are also appropriated directly to FPHSA."[34] Considering both the state's liability for a judgment against the FPHSA and the state's liability for the FPHSA's general debts and obligations, the Court finds that the second factor weighs in favor of finding the FPHSA to be an arm of the state.

The third factor in the Court's analysis is the degree of local autonomy the FPHSA enjoys. This factor weighs in favor of finding the FPHSA to be an arm of the state.

The FPHSA is governed by a board of nine members, each of whom "shall be appointed by the governing authority of each parish." La. Stat. Ann. § 28:913.2(A)–(B). The appointments must be "ratif[ied] by a plurality of the legislative delegation representing the five parishes which are included in the [FPHSA]." *Id.* (B) All of the board members are subject to the "Code of Governmental Ethics," La. Stat. Ann. § 28:913.7(6), and "[a]ll employees of the districts and authorities shall be members of

---

[34] LOUISIANA DEP'T HEALTH, LDH STRATEGIC PLAN FISCAL YEAR 2022–2028: 09-301 FLORIDA PARISHES HUMAN SERVICES AUTHORITY 9, https://www.ldh.la.gov/assets/docs/budget/FY20202025LDH5YearStrategicPlan.pdf (last accessed Jan. 24, 2023).

16

the state civil service system and the Louisiana State Employees' Retirement System[,]" La. Stat. Ann. § 28:916(D).

The LDH also exercises significant control over the operations of the FPHSA. The secretary of the LDH is "responsible for policy, development, implementation, and monitoring of service provision of the statewide human services system." La. Stat. Ann. § 28:918(A). The LDH has the "authority to survey and monitor the human services districts and authorities by conducting onsite reviews, desk reviews, data reviews, requiring data submission on grant funds, legislative reporting, federal or state requirements, and budgeting purposes." *Id.* (F). The LDH also has the authority "to assume temporary management of the district or authority if noncompliance with the [agreement between the LDH and FPHSA] constitutes a threat to public health or well-being . . . ." *Id.* (E)(2)(a). In such an event, the LDH will "assume responsibility and oversight for the provision of services with funds appropriated to the district until such time as the district has met the compliance standards . . . ." *Id.* In light of the significant authority the state maintains over the operations of the FPHSA, the third factor in the Court's analysis weighs in favor of finding the FPHSA to be an arm of the state.

The fourth factor in the Court's analysis concerns whether the FPHSA is concerned primarily with local, as opposed to statewide, problems. The Louisiana legislature established the FPHSA to provide "state-funded behavioral healthcare and care for persons with intellectual disabilities and developmental disabilities" at the "local level to ensure local accountability, responsiveness to the unique needs of

17

the community, and the establishment of local partnerships and relationships with other local agencies . . . ." La. Stat. Ann. § 28:910(A). The FPHSA has a "responsibility to prioritize and provide for state-funded services[.]" La. Stat. Ann. § 28:914(A)(19). Accordingly, while the FPHSA's remit is local, its primary purpose is to address statewide problems. The fourth factor therefore is at a minimum neutral, but arguably weighs in favor of a finding that the FPHSA is an arm of the state.

Finally, the fifth and sixth factors concern whether the entity has the authority to sue and be sued in its own name and whether the entity has the right to hold and use property, respectively. The FPHSA has "the power to sue and be sued" and the power to "acquire movable and immovable property by lease, purchase, donation, or otherwise and to obtain title to same in its own name." La. Stat. Ann. § 28:915(C), (B)(4). Accordingly, the final two factors weigh against finding the FPHSA to be an arm of the state. However, as stated, these two factors are given the least weight in the Court's analysis. *Smith*, 372 F. Supp. 3d at 448.

Considering all of the factors, and giving the most weight to the second factor, the Court finds that the FPHSA is properly considered an arm of the state and is therefore entitled to sovereign immunity under the Eleventh Amendment. The Court will therefore dismiss Sims' claims pursuant to 42 U.S.C. §§ 1981 and 1983 for lack of jurisdiction.[35]

---

[35] As the Court finds it lacks jurisdiction over Sims' 42 U.S.C. §§ 1981 and 1983 claims, it need not address the defendants' additional argument that Sims' claims under these statutes are prescribed. *See* R. Doc. No. 6-1, at 11–12.

## IV. CONCLUSION

**IT IS ORDERED** the defendants' motion to dismiss is **GRANTED** and Sims' claims pursuant to 42 U.S.C. §§ 1981 and 1983 are **DISMISSED WITH PREJUDICE**, and Sims' claims pertaining to Title VII and the ADA are **DISMISSED WITHOUT PREJUDICE** for the reasons provided herein.

**IT IS FURTHER ORDERED** that the defendants' motion for a more definite statement is **DENIED AS MOOT**.

New Orleans, Louisiana, January 24, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**